UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| ROBERT SOLO and ELENA BOURYGINA, | ) ) ) | |
| | ) | 3:24-CV-00294-DCLC-JEM |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BALL HOMES, LLC, | ) ) | |
| Defendant. | ) ) | |

**ORDER**

Plaintiffs Robert Solo and Elena Bourygina, proceeding *pro se*, initiated this action against Ball Homes, LLC ("Ball Homes") on July 3, 2024, seeking damages and injunctive relief for trespass to land, nuisance, and negligence arising from the alleged diversion of stormwater onto Plaintiffs' property by Ball Homes [Doc. 1]. Specifically, Plaintiffs contend that Ball Homes is developing a 20-acre subdivision directly behind their property in Knoxville, Tennessee [*Id*. at pg. 6]. As part of that development, Plaintiffs assert that Ball Homes constructed "a manmade pond the size of a lake for storing stormwater" and installed a drainage system consisting of a large culvert "directed to discharge and runoff all stored stormwater" onto their property and their neighbor's property [*Id*.]. Plaintiffs allege the stormwater runoff has caused extensive damages to their yard, building, driveway, and garage [*Id*. at pg. 5]. Among the relief sought, Plaintiffs seek an *ex parte* "Temporary Restraining Order (TRO) to immediately halt Ball Homes LLC from directing water onto their yard, building, and driveway" [*Id*. at pg. 6].

The purpose of injunctive relief "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir.

1

1996). TROs and preliminary injunctions "are extraordinary remedies which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc.*, 670 F. Supp. 2d 674, 682 (W.D. Tenn. 2009) (citation omitted). In determining whether to grant such extraordinary relief, the Court considers the following factors:

> (1) whether the [movant] has shown a strong likelihood of success on the merits;
> (2) whether the [movant] will suffer irreparable harm if the injunction is not issued;
> (3) whether the issuance of the injunction would cause substantial harm to others;
> and (4) whether the public interest would be served by issuance of the injunction.

*Id*. at 682–83. Although "[t]he standard for issuing a [TRO] is logically the same as for a preliminary injunction," the "emphasis [is] on irreparable harm given that the purpose of a [TRO] is to maintain the status quo." *ABX Air, Inc. v. Int'l Brotherhood of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016). Additionally, to issue a TRO *ex parte*, *i.e.*, without notice to the adverse party, "specific facts in an affidavit or verified complaint [must] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed.R.Civ.P. 65(b)(1)(A).

Here, Plaintiffs state that they are "highly confident in [their] likelihood of prevailing" because the case "involves clear wrongful conduct by [Ball Homes]" [Doc. 1, pg. 7]. To be sure, Tennessee law "regarding a change in natural drainage is well-settled[.]" *Zollinger v. Carter*, 837 S.W.2d 613, 614 (Tenn. Ct. App. 1992). "If the owner of higher lands alters the natural condition of his property so that surface waters collect and pour in concentrated form or in unnatural quantities upon lower lands, he will be responsible for all damages caused thereby to the possessor of the lower lands." *Id*. at 614–615. "A wrongful interference with the natural drainage of surface water causing injury to an adjoining landowner constitutes an actionable nuisance." *Dixon v. City of Nashville*, 203 S.W.2d 178, 182 (Tenn. 1946). Thus, accepting the allegations in Plaintiffs' Complaint as true, they are likely to succeed, at least, on their private nuisance claim.

2

Plaintiffs additionally assert that a "failure to issue the TRO will result in immediate and irreparable harm" [Doc. 1, pg. 7]. "Irreparable harm is an 'indispensable' requirement" for injunctive relief. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) (citation omitted). To demonstrate irreparable harm, Plaintiffs must show that, without the requested injunctive relief, "they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (citations omitted). A plaintiff's asserted harm is not irreparable if it is "fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Regents of Univ. of California v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 519 (9th Cir. 1984) (reiterating "the principle that the exercise of equitable jurisdiction is predicated on the absence of an adequate remedy at law.").

Plaintiffs contend that the force of the runoff during storms or heavy rain presents a "significant risk of accidents or severe harm to vehicles and pedestrians" because "it could potentially sweep [their] cars from the driveway down to the lower street" [Doc. 1, pg. 8]. Plaintiffs also state that the stormwater runoff renders the yard and driveway "dangerously icy and slippery" during cold weather [*Id.*]. Neither of the foregoing constitute irreparable harm. First, the claim that the runoff is forceful enough to sweep a vehicle from the driveway is speculative and unsubstantiated. As for any risk of harm associated with freezing temperatures, such risk is not imminent given that Knoxville, Tennessee will not experience below-freezing weather for at least the next four months. The only other harms alleged by Plaintiffs are fully compensable by monetary damages. These include damages to Plaintiffs' yard, septic system, home, and driveway. Because Plaintiff have adequate remedies at law, they have failed to show that they will suffer irreparable harm in the absence of a TRO.

3

Even if Plaintiffs could demonstrate some form of irreparable harm, their requested relief goes beyond preservation of the status quo and would require affirmative action from Ball Homes. Specifically, Plaintiffs ask the Court to require Ball Homes to "either pump the pond/lake water to other street sources, shut down the pond, or connect it to street runoff" [Doc. 1, pg. 3]. However, "a TRO tantamount to a mandatory injunction requires a higher . . . burden to issue than required of an order merely preserving the status quo." *Shelby Cnty. Advocs. for Valid Elections v. Hargett*, 348 F. Supp. 3d 764, 769 (W.D. Tenn. 2018). At this time, Plaintiffs have failed to demonstrate that a mandatory injunction is warranted. Accordingly, Plaintiffs' *ex parte* Motion for TRO [Doc. 8] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge